INDIANA STATE BOARD OF PUBLIC WELFARE, Indiana Department of Public Welfare, and Suzanne Magnant, in her capacity as Administrator of the Indiana Department of Public Welfare, Appellants–Defendants,

v.

TIOGA PINES LIVING CENTER, INC., Communicare of Indiana, Inc., d/b/a American Village Retirement Community, Bloomington Convalescent Center, Inc., Meadow Heights Nursing Center, Inc., d/b/a Lincoln Hills of New Albany, Appellees–Plaintiffs.

No. 30A04–9006–CV–288.

Court of Appeals of Indiana, Fourth District.

July 22, 1991.

Opinion on Denial of Rehearing Sept. 25, 1991.

Linley E. Pearson, Atty. Gen., Gordon E. White, Jr., Deputy Atty. Gen., Office of the Atty. Gen., Indianapolis, Charles A. Miller, Mark H. Lynch, Steven F. Reich, Richard W. Buchanan, Covington & Burling, Washington, D.C., for appellants-defendants.

David F. McNamar, Randall R. Fearnow, Steers, Sullivan, McNamar & Rogers, Indianapolis, Michael J. Tosick, Greenfield, for appellees-plaintiffs.

CONOVER, Judge.

Defendants–Appellants Indiana State Board of Public Welfare (IBPW), Indiana Department of Public Welfare (IDPW), and Suzanne Magnant, in her capacity as Administrator of the Indiana Department of Public Welfare (collectively, the State), interlocutorily appeal the Hancock Circuit Court's entry of a preliminary injunction and class certification of similarly-situated Indiana nursing homes, with Plaintiffs–Appellees Tioga Pines Living Center, Inc., Communicare of Indiana, Inc., d/b/a American Village Retirement Community, Bloomington Convalescent Center, Inc., Meadow Heights Nursing Center, Inc., d/b/a Lincoln Hills of New Albany, et al., as class representatives for class action purposes.

Reversed in part and affirmed in part.

This appeal presents the following issues:

Whether the trial court erred by

1. entering a preliminary injunction ordering the State to escrow monthly the monetary difference between the old and new cost control cap rates for reimbursing Indiana nursing homes under the Medicaid program, and

2. certifying as a class the approximately 785 skilled nursing facilities and intermediate care facilities (nursing homes) in Indiana qualified to receive Medicaid reimbursement payments from the State, with the captioned nursing homes as class representatives for class action purposes under Ind.Trial Rule 23.

The IDPW is charged with the duty of administering the reimbursement of Indiana nursing homes for the care of Medicaid patients. It sets reimbursement rates from time to time, using in part federal guidelines when so doing because the federal government provides matching funds to Indiana to be used for that purpose. Under the regulations promulgated by the State, qualified nursing homes must file annual reports with IDPW—stating their patient care and operating costs. IDPW then determines what costs are allowable for Medicaid reimbursement purposes as to each nursing home. One accounting factor always considered by IDPW when making reimbursement payments has been the amount of any annual increase in patient care costs reported by these qualified nursing homes to IDPW.

Medicaid reimbursement is currently based on a system of allowable costs as defined in the regulations, plus a potential incentive payment to promote efficient operation of participating nursing homes. Prior to 1983, the Medicaid reimbursement rate to each nursing home for annual increases in patient care and operating costs over its previous year's costs was capped at 9% per annum under a federal regulation requiring payment to nursing facilities "on a reasonable cost-related basis." Such facilities were reimbursed retrospectively for whatever reasonable costs they incurred. 42 U.S.C. § 1396a(a)(13)(E) (1976). In 1980, however, as part of the Omnibus Budget Reconciliation Act of that year, the Boren Amendment was enacted by Congress. Its intent was to reduce the level of reimbursement paid by the states to Medicaid-qualified nursing homes to control spiraling health care costs that are notoriously inflationary. *See, Charleston Memorial Hospital v. Conrad* (4th Cir.1982) 693 F.2d 324, 331, and *Illinois Council on Long Term Care v. Miller* (N.D.Ill.1983) 579 F.Supp. 1140, 1147. The Boren Amendment provides a state's reimbursement methodology must yield rates that are "reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities in order to provide care and services in conformity with applicable State and Federal laws, regulations and quality and safety standards." 42 U.S.C. § 1396a(a)(13)(A). IDPW changed its method of Medicaid reimbursement to conform to Boren Amendment requirements in 1983.

In April of that year, acting on the recommendation of its accounting consultants, IBPW attempted to adopt, and IDPW to promulgate, an amendment to the regulations changing the method of capping annual rates by linking them to the preceding three year average of the Gross National Product Implicit Price Deflator. (R. 237). *See* 470 IAC 5–4.1–9(c)(3). Starting in October, 1983, IDPW began making payments to qualified nursing homes based on the new cap rate, rather than the old 9% one.

Subsequently in P.L. 80–1984, the legislature changed the former "reasonable cost-related basis" standard for reimbursement by adding a new section to the Medicaid reimbursement law, IND.CODE 12–1–7–17.2 (now 17.6), which provided in part

(b) Payment of skilled nursing facility and intermediate care facility services shall, under 42 U.S.C. 1396a(a)(13)(A), be determined in accordance with a prospective, ... payment rate that is reasonable and adequate to meet the costs that are incurred by efficiently and economically operated facilities in order to provide care and services in conformity with state and federal laws, rules, regulations, and quality and safety standards, with a growth or profit factor, as determined in accordance with generally accepted accounting principles, in accordance with rules adopted by the department [of public welfare].

The captioned nursing homes later filed this suit, claiming the new cap rate was not duly adopted and promulgated by the State because the applicable statutory procedure for doing so had not been followed. The suit also sought, among other things, (a) a preliminary injunction to prevent the State from reducing payments under the new cap rate, and (b) class certification of all similarly situated Indiana nursing homes for class action purposes under Ind.Rules of Proc., Trial Rule 23.

After a hearing, the trial court issued a preliminary injunction requiring the State to pay into escrow the difference between

the amounts paid to these nursing homes under the new cap rate and that which would have been paid under the old one, a sum estimated to be approximately $4,000,-000 per month. Additionally, the trial court certified the cause as a class action, both as to issues and damages, and ordered appropriate notification to the class.

The State then filed this interlocutory appeal to challenge the trial court's entry of the preliminary injunction and certification of the cause as a class action. Additional facts, as necessary, appear in the later portions of this opinion.

### I

The grant or denial of a preliminary injunction rests within the equitable discretion of the trial court. *Wells v. Auberry* (1982) Ind.App., 429 N.E.2d 679, 682, *reh. den'd., trans. den'd.* The trial court's order will not be disturbed unless it is clearly erroneous, or is the result of an improvident exercise of judicial discretion. *Id.* We believe issuance of the preliminary injunction in this case was clearly erroneous because the appellees have an adequate remedy at law, and limit our discussion to that principle.

The purpose of a preliminary injunction is to maintain the *status quo* until the underlying claim can be adjudicated. As Ratliff, C.J. said

> The necessity of maintaining the *status quo* is to prevent harm to the moving party which could not be corrected by a final judgment. If irreparable injury were to occur during the course of litigation, the judgment, in effect, would be rendered meaningless. Thus, it has been held that an injunction will not be granted where the law can provide a full, adequate, and complete method of redress. (citing case) It would appear that only harm which a court cannot remedy following a final determination on the merits may be deemed to constitute irreparable injury warranting issuance of a preliminary injunction. (citing case)

*Wells,* 429 N.E.2d at 683.

Our studied review of the trial court's findings in this regard reveals only monetary damage will occur to the nursing homes until a final judgment can be entered in this case. The trial court's Finding of Fact No. 17 states, in part

> 17. Plaintiffs and the class have no adequate remedy at law.... There is immediate and irreparable harm by the defendants continually utilizing such illegal regulations and/or unpromulgated policies as was established herein. Facilities are being sold or closing [sic] because of the imposition of these limiters which prohibit reasonable costs from being reimbursed.[1]

Mere economic injury does not warrant the granting of a preliminary injunction. *Whiteco Industries, Inc. v. Nickolick* (1990), Ind.App., 549 N.E.2d 396; *Wells,* at 684. Thus, even the sale or closing of some facilities in the class does not justify the issuance of a preliminary injunction when there is an adequate remedy at law available to them.[2] In *Indiana State Dept. of Welfare v. Stagner* (1980), Ind. App., 410 N.E.2d 1348, it was said

> This threatened business failure we conclude is not the sort of irreparable injury against which equity protects. It is clear that the temporary loss of income ultimately to be recovered if successful on the merits does not usually constitute irreparable harm. "The key word in this consideration is irreparable. Mere injuries, however substantial in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Virginia Petroleum Jobbers Ass'n v. FPC,* (D.C.Cir.1958) 259 F.2d 921, 925.

*Stagner,* 410 N.E.2d at 1352-53. When there is an adequate remedy at law, there

---

1. Finding of Fact 17's pronouncement as to "no adequate remedy at law" is, in fact, a conclusion of law by which we are not bound on appeal. Only factual determinations do so.

2. We further note even the preliminary injunction issued here is of no assistance to facilities in such distress. It merely provides for the accumulation of state funds without provision for partial distribution in the interim. Relief for those in economic difficulty would come only if the class were successful at the conclusion of a trial on the merits, a point in time rather far in the future, given the customary course of class action proceedings.

is no need to consider the merits of a plaintiff's claim. *Indiana & Michigan Electric Co. v. Southern Wells School Building Corp.* (1972), 258 Ind. 75, 279 N.E.2d 228, 229.

Because there is an adequate remedy at law, the trial court abused its discretion by issuing the preliminary injunction here. The same constitutes reversible error.

## II

The State next contends the trial court erred by certifying the nearly 785 nursing homes it deems similarly situated as a class under Ind.Trial Rule 23. It claims the trial court had no authority to declare a class because (a) the nursing homes have not exhausted their administrative remedies, and (b) the nursing homes have not established a "predominance of common claims", as required by T.R. 23(B)(3). We disagree.

## A

■ It is hornbook administrative law that potential plaintiffs must first exhaust their administrative remedies before seeking judicial relief. *State ex rel. Paynter v. Marion County Superior Court Room No. 5* (1976), 264 Ind. 345, 344 N.E.2d 846, 851; *Public Service Commission v. City of Indianapolis* (1956), 235 Ind. 70, 131 N.E.2d 308, 313. However, there are three recognized exceptions to this rule: direct resort to the courts is justified where (1) compliance with the rule would be futile, (2) the statute is charged to be void on its face, or (3) irreparable injury would result. *Indiana High School Athletic Ass'n. v. Raike* (1975), 164 Ind.App. 169, 329 N.E.2d 66, 82. *Accord, Bowen v. Sonnenburg* (1980), Ind.App., 411 N.E.2d 390, 403.

■ The gravamen of the nursing homes' complaint below is that the regulations attempting to change the method by which the cap rates are determined are void. They were not adopted according to the requirements of state statute prescribing the method by which departmental regulations may be amended in this state, the nursing homes claim. We see no fundamental difference between such a lawsuit and one challenging the validity of a statute itself.

The issues in this lawsuit fall almost foursquare within the provisions of the Indiana Declaratory Judgments Act, IC 34-4-10-1, *et seq.* Although departmental regulations promulgated under a statute are not specifically mentioned in IC 34-4-10-2, the Act is to be liberally construed and administered to "settle and afford relief from uncertainty and insecurity with respect to rights, status and other legal relations...." IC 34-4-10-12. We do not believe testing of the validity of departmental regulations under the circumstances presented in this case is prohibited by the Declaratory Judgments Act. Rather, it is impliedly included within its terms because the regulations in question were purportedly promulgated under statutory authority giving IBPW and IDPW the right so to do. Thus, the case falls within the second *Raike* exception.

■ Also, the validity of the challenged regulations are being tested under federal law, namely, 42 U.S.C. § 1983. The Boren Amendment created enforceable rights, and Congress did not intend to withdraw the private remedy provided by § 1983. *Wilder v. Virginia Hospital Ass'n.* —— U.S. ——, 110 S.Ct. 2510, 2524, 110 L.Ed.2d 455. Even if valid, state regulations providing for review of individual claims for payment do not foreclose resort to § 1983 relief. *Wilder*, 110 S.Ct. at 2524. Thus, the trial court also has § 1983 jurisdiction to entertain this case.

## B

■ Finally, the State complains the nursing homes have not shown a predominance of "common claims". Actually, the rule phrases it as "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, ..." In determining whether class certification was properly granted here, we apply the abuse of discretion standard. *Skalbania v. Simmons* (1982), Ind.App., 443 N.E.2d 352, 356-357. If some substantial evidence having probative value supports the trial court's judgment, we will affirm it. *Skalbania, Id.*

The State has not challenged the sufficiency of any of the trial court's findings of fact. In its findings of facts, the trial court found

5. The claims of plaintiffs are typical of the claims of all Medicaid health facilities, and these issues involve only questions of law and fact which predominate over any questions involving only individual members.

(R. 493). It is readily apparent the issues as to the validity or invalidity of the DPW's questioned regulations are common to the class. Also, although the State argues to the contrary, it is also apparent damage questions can be resolved one way or another in almost all individual cases substantially by the application of rote mathematics once the underlying fundamentals have been determined, if the nursing homes are successful. The trial court did not abuse its discretion by certifying this cause as a class action both as to issues and damages.

Reversed in part, affirmed in part, and remanded for further proceedings consistent with this opinion.

CHEZEM and HOFFMAN, JJ., concur.

### ON PETITION FOR REHEARING

Plaintiffs–Appellees Tioga Pines Living Center, Inc., et al. (the class) has filed a Petition for Rehearing. While all other issues were adequately addressed in our original opinion, we now address the class's claim the issues in this appeal were mooted by the State's promulgation of new regulations in March, 1991, and we should have granted the class's motion to dismiss for mootness it filed here on March 21, 1991.

 This appeal is not moot for two reasons:

1. The record was never supplemented to show us because of mootness, the funds in the original escrow account, more than $8,370,000 at the time the motion to dismiss was filed, had been ordered returned to the state by the trial court, and

2. The motion itself told us another injunction had been issued by the trial judge as to the newly-promulgated regulations.

Clearly, the appeal was not moot so long as the state's funds remained in escrow under the trial court's invalid escrow order. Further, the escrowing of funds at the rate of $4,000,000 or more per month is a matter of great public interest, warranting our opinion as to the validity of the original escrow for the trial court's guidance as to future escrows of similar nature.

For those reasons, the issues were not mooted by the promulgation of new regulations. The class's motion to dismiss and petition for rehearing are denied.

CHEZEM and HOFFMAN, JJ., concur.