LHT CAPITAL, LLC, Appellant–Plaintiff,

v.

INDIANA HORSE RACING COMMISSION, Indianapolis Downs, LLC, Oliver Racing, LLC, Duff Taylor Investments, LLC, and Ross J. Mangano, Appellees–Defendants.

No. 49A02–0712–CV–1149.

Court of Appeals of Indiana.

Aug. 7, 2008.

James Bopp, Jr., Barry A. Bostrom, Bopp Coleson & Bostrom, Terre Haute, IN, Attorneys for Appellant.

Judy L. Woods, Paul D. Vink, Bose McKinney & Evans, Indianapolis, IN, Attorneys for Appellee Indiana Horse Racing Commission.

J. Lee McNeely, McNeely Stephenson Thopy & Harrold, Shelbyville, IN, Attorney for Appellee Indianapolis Downs, LLC.

## OPINION

BROWN, Judge.

LHT Capital, LLC ("LHT"), appeals the trial court's dismissal of its complaint against the Indiana Horse Racing Commission ("Commission"), Indianapolis Downs, LLC ("Indiana Downs"), Oliver Racing, LLC ("Oliver Racing"), Duff Taylor Investments, LLC ("Duff Taylor"), and Ross Mangano ("Mangano"). LHT raises three issues, one of which we find dispositive and restate as whether the trial court abused its discretion by granting the motion to dismiss for lack of subject matter jurisdiction. We affirm.

The relevant facts follow. On May 11, 2007, Governor Mitch Daniels signed Indiana House Bill 1835, authorizing Indiana's pari-mutuel horse racing tracks to apply for gaming licenses for slot machines at their racetracks. *See* Pub.L. No. 233–2007. The "initial licensing fee" was $250 million, with $150 million payable before November 1, 2007, and the remaining $100 million payable before November 1, 2008. *See* Ind.Code § 4–35–5–3 (Supp. 2007) (subsequently amended by Pub.L. No. 146, § 19 (eff. Jan. 1, 2009)). Effective May 11, 2007, Indiana also imposed a $50 million transfer fee "on an initial licensee [1] who sells or otherwise relinquishes a *controlling interest,* as determined under the rules of the commission, in a gambling game license." Ind.Code § 4–35–5–7(d) (Supp.2007) (emphasis added).

Prior Commission regulations required a person holding a permit to conduct pari-mutuel horse racing to obtain approval of certain changes in ownership. *See* 71 Ind. Admin. Code § 11–1–13 (2006). On June 12, 2007, the Commission adopted an emergency rule revising 71 Ind. Admin. Code § 11–1–13 that provided: "In making a determination whether to authorize and approve either a proposed nominal or substantial change in ownership, the commis-

---

1. "Licensee" is defined as "a person holding a license issued under [Ind.Code §§ 4–35]," which concerns slot machines at racetracks.

sion will consider the extent to which the state would share in any monetary payment to or economic benefit realized by the person divesting the ownership interest." 71 Ind. Admin. Code § 11–1–13(d) ("Emergency Rule").[2]

In 2001, the Commission had granted Indiana Downs a permit to conduct live pari-mutuel horse racing in Shelbyville. Oliver Racing held a controlling interest in Indiana Downs, LHT held a 34.34% interest, and Duff Taylor and Mangano held small interests. A dispute arose between LHT and Oliver Racing, and in July 2007, the parties agreed that Indiana Downs would redeem LHT's ownership interest in the company. According to LHT, if the parties had been unable to reach an agreement, the November 1, 2007 payment of the license fee to add slot machines would

have been jeopardized. Appellant's Appendix at 23. The settlement "cleared the way" for Indiana Downs to add slot machines. *Id.* The agreement between LHT and Indiana Downs provided that approval by the Commission was a condition precedent to closing the transaction. Closing was set for August 10, 2007.

On July 18, 2007, Indiana Downs and LHT filed a petition with the Commission for approval of the redemption pursuant to 71 Ind. Admin. Code 11–1–13 and attached a "Binding Term Sheet" regarding the redemption and agreement between LHT and Indiana Downs. Indiana Downs and LHT filed supplemental filings and, on August 2, 2007, filed another supplemental filing that provided, in part:

> In addition to the benefit to the State of Indiana in resolving all disputes between

---

**2.** Other relevant portions of 71 Ind. Admin. Code 11–1–13 provide:

(a) A permit issued under IC 4–31–5 is for the benefit of the permit holder only and is applicable only to the location for which the permit is issued. The permit may not be sold or otherwise transferred and shall terminate upon a change of ownership of the permit holder, unless the commission has granted prior written approval of the change of ownership or unless this section has been otherwise complied with.

(b) The sale, pledge, encumbrance, execution of an option agreement, or other transfer of five percent (5%) or more of the equity securities or other ownership interest of a partnership, association, corporation, or other entity holding a permit shall be considered a substantial change of ownership. A "substantial change in ownership", for purposes of this subsection, includes ownership, directly or indirectly, by a person, individually or in association with others, contingent or otherwise, whether through a subsidiary or intermediary, who acquires or has a right to acquire, directly or indirectly, a five percent (5%) or more beneficial ownership of the permit holder. Any request for approval of a substantial change in ownership shall contain the same information that is required to be furnished under section 4 of this rule. Upon receipt of all information required by the commission

with regard to a proposed substantial change in ownership, the commission shall, as soon as practicable, make a determination whether to authorize and approve the substantial change in ownership of a permit holder.

(c) The sale, pledge, encumbrance, execution of an option agreement, or other transfer of ownership of a permit which is less than five percent (5%) of the equity securities or other ownership interest of a partnership, association, corporation, or other entity holding a permit shall be considered a nominal change of ownership. A request for approval to make a nominal change of ownership shall be filed with the commission within fifteen (15) days of the execution of the documents upon which the proposed nominal change of ownership will be based. The commission shall determine whether the proposed nominal change of ownership may have an adverse effect upon pari-mutuel racing or the integrity of pari-mutuel racing. Upon receipt of all information required by the commission with regard to a proposed nominal change of ownership, the commission or its executive director shall, as soon as practicable, make a determination whether to authorize and approve the nominal change in ownership of a permit holder.

the parties as set forth in the Petition filed on July 18, 2007, LHT respectfully requests that the Commission consider pursuant to 71 IAC 11–1–13(d) the benefit to the State of Indiana related to (i) the payment of $10 million by LHT or any of its affiliates to a charitable fund with the Central Indiana Community Foundation and (ii) an investment of $10 million by LHT or any of its affiliates in private Indiana businesses with any such business having at least 50 employees located in the State of Indiana and at least seventy-five percent (75%) of its assets located in the State of Indiana. The donation and investment will be made at the time of the closing pursuant to the Binding Term Sheet referenced in the Petition filed on July 18, 2007.

*Id.* at 283. LHT requested that the Commission consider the petition at a meeting held on or before August 10, 2007.

LHT asserts that the Commission demanded a $15 million transfer fee.[3] In an August 6, 2007 letter to the Commission's counsel, counsel for Indiana Downs and LHT complained regarding the Commission's "illegal attempts to extract $15 million or more from our client." *Id.* at 89. Indiana Downs and LHT included a draft complaint with the letter and argued that the Commission's "transfer tax" for non-controlling interests was not authorized by the legislature and was unconstitutional. *Id.* at 93. On August 8, 2007, LHT proposed in emails a $9 million transfer fee, a $10 million payment to the Central Indiana Community Foundation, and a $10 million investment in an Indiana business. The

parties then engaged in negotiations regarding language for the redemption and settlement agreement, including language releasing claims against the Commission and releasing claims for a refund from the Commission.

The Commission set a hearing for August 15, 2007, and on August 14, 2007, LHT filed another supplemental filing with the Commission, which included amendments to the Binding Term Sheet. The amendments extended the closing date for the transaction and proposed a $9 million transfer fee, a $10 million contribution to an affiliate of the Central Indiana Community Foundation, and a $10 million investment in an Indiana business. The amendments also included proposals for "mutual releases of the parties and their affiliates and of the [Commission] and other State parties...." *Id.* at 297. In the late afternoon of August 14, LHT's counsel sent an email to the Commission's counsel proposing a change of the $10 million contribution to a $9 million contribution. The Commission then cancelled the August 15, 2007 hearing.

On August 17, the Commission's counsel proposed changes to LHT's supplemental filing, and the Commission set a hearing for August 21, 2007. On August 20, LHT filed another supplemental filing with the Commission. The filing included a request that the Commission "consider the benefit to the State of Indiana" of a $9 million transfer fee, a $9 million contribution to an affiliate of the Central Indiana Community Foundation, and a $10 million investment in an Indiana business.[4] *Id.* at 309–310.

---

3. LHT asserts that "[t]he Commission decided to use the emergency rule to demand that LHT pay either 50% of its after-tax gain or $15 million to the State in order to be allowed to divest itself of its ownership interest in Indiana Downs." Appellant's Brief at 6. However, LHT does not cite to the record in support of this assertion. We remind LHT

that "[i]t is well settled that matters outside the record cannot be considered by this court on appeal." *Schaefer v. Kumar*, 804 N.E.2d 184, 187 n. 3 (Ind.Ct.App.2004), *trans. denied.*

4. LHT asserts that "[i]n a phone conversation with counsel for LHT, counsel for the Commission made it clear to LHT that the Com-

At the August 21, 2007 hearing, LHT did not raise the constitutionality or legality of the transfer fee.[5] On the same day, the Commission entered findings of fact and conclusions of law granting LHT's petition to transfer ownership.

On September 19, 2007, LHT filed a petition for judicial review of the Commission's August 21, 2007 order. LHT argued that the Emergency Rule, 71 Ind. Admin. Code § 11–1–13(d), was an unconstitutional taking, the Emergency Rule was void for vagueness, the Emergency Rule violated the separation of powers principles of the Indiana Constitution, and the Commission exceeded its authority by promulgating the Emergency Rule and ordering the payment of a transfer fee. LHT requested a refund of the $9 million transfer fee and a declaration that the Emergency Rule was unconstitutional or invalid.

The Commission filed a motion to dismiss LHT's petition for judicial review, alleging that LHT had failed to exhaust its administrative remedies by failing to challenge the validity of the transfer fee during the agency proceedings. Indiana Downs, Oliver Racing, and Mangano also filed a motion to dismiss LHT's petition for judicial review and incorporated the Commission's memorandum. The "Comprehensive Settlement Agreement and Mutual Release" was filed with the trial court under seal due to confidentiality provisions in the agreement.[6] Appellee's Green Appendix at 2. After the agency record was filed, LHT filed a memorandum in opposition to the motion to dismiss, the Commission filed a reply, and the trial court granted a motion filed by LHT to correct the agency record. The trial court then granted the Commission's motion to dismiss.

The issue is whether the trial court abused its discretion by granting the motion to dismiss for failure to exhaust administrative remedies. The standard of appellate review for a motion to dismiss for lack of subject matter jurisdiction is a function of what occurred in the trial court. *GKN Co. v. Magness,* 744 N.E.2d 397, 401 (Ind.2001). The Court held in *GKN* that the standard of review is dependent upon "(i) whether the trial court resolved disputed facts; and (ii) if the trial court resolved disputed facts, whether it conducted an evidentiary hearing or ruled on a 'paper record.'" *Id.* Here, the facts before the trial court were not in dispute, and the question of subject matter jurisdiction is purely one of law. *See id.* Consequently, our review is de novo. *Id.; see also M–Plan, Inc. v. Ind. Comprehensive Health Ins. Ass'n,* 809 N.E.2d 834, 837 (Ind.2004).

mission was aware of the [sic] LHT's objections to the emergency rule and transfer tax, but that the Commission declined to hear LHT's arguments at the hearing." Appellant's Brief at 7. However, LHT does not cite to the record in support of this assertion. Again, we remind LHT that "[i]t is well settled that matters outside the record cannot be considered by this court on appeal." *Schaefer,* 804 N.E.2d at 187 n. 3.

5. LHT asserts that "a lengthy discussion regarding the enforcement of the Commission's emergency rule on transfers of *non-controlling* interests" was held at the hearing. Appellant's Brief at 10. However, the discus-

sion at the hearing centered on a request to waive transfer rules with respect to LHT's contribution of 20% of its membership interests (or $9 million) to the Central Indiana Community Foundation. The discussion did not concern the legality or constitutionality of the transfer rules.

6. The agreement was filed with this court in an appendix on green paper because of the confidentiality provisions. An unredacted version of the Commission's appellee's brief was also filed on green paper, while a redacted version of the brief was filed on white paper for public access. LHT's reply brief followed the same procedure.

■■■ The Commission argued to the trial court that LHT had failed to exhaust its administrative remedies. Failure to exhaust administrative remedies deprives the trial court of subject matter jurisdiction. *Johnson v. Celebration Fireworks, Inc.,* 829 N.E.2d 979, 984 (Ind.2005). Under the Administrative Orders and Procedures Act ("AOPA"), "[a] person may file a petition for judicial review under this chapter only after exhausting all administrative remedies available within the agency whose action is being challenged and within any other agency authorized to exercise administrative review." Ind.Code § 4–21.5–5–4(a). Moreover, a person may obtain judicial review only of an issue that was raised before the administrative agency.[7] Ind.Code § 4–21.5–5–10. In accordance with the AOPA, the Indiana Supreme Court has "repeatedly emphasized the value of completing administrative proceedings before resorting to judicial review." *Celebration Fireworks,* 829 N.E.2d at 982. The Court has found that "the exhaustion doctrine is supported by 'strong policy reasons and considerations of judicial economy....'" *Id.* (quoting *Austin Lakes Joint Venture v. Avon Util., Inc.,* 648 N.E.2d 641, 644 (Ind.1995)). Most notably:

> The exhaustion doctrine is intended to defer judicial review until controversies have been channeled through the complete administrative process. The exhaustion requirement serves to avoid collateral, dilatory action ... and to ensure the efficient, uninterrupted progression of administrative proceedings and the effective application of judicial review. It provides an agency with an

opportunity "to correct its own errors, to afford the parties and the courts the benefit of [the agency's] experience and expertise, and to compile a [factual] record which is adequate for judicial review."

*Id.* (quoting *Austin Lakes Joint Venture,* 648 N.E.2d at 644). While we avoid applying the exhaustion of administrative remedies doctrine in a mechanical fashion, we recognize its strong policy rationale and adhere to it closely. *Id.* at 983.

On appeal, LHT argues that the trial court erred by dismissing its petition for judicial review because: (1) it exhausted its administrative remedies by raising the constitutionality and legality of the Emergency Rule before the Commission and by filing a timely petition for judicial review; and (2) it was not required to exhaust its administrative remedies because doing so would be futile and because it is challenging the rule as facially invalid and unconstitutional.

## A. Did LHT Exhaust its Administrative Remedies?

■■■ LHT argues that it exhausted its administrative remedies by filing a timely petition for judicial review. LHT points out that the Commission's order included a provision that LHT had "the right to seek judicial review of this Order pursuant to the provisions of I.C. § 4–21.5–5 et seq. provided such action is filed within thirty (30) days from the date of this Order pursuant to I.C. § 4–21.5–5–5[.]" Appellant's Appendix at 15–16. According to LHT, simply filing a timely petition result-

---

**7.** Ind.Code § 4–21.5–5–10 contains two exceptions to the requirement that the issue be raised before the administrative agency: (1) where the issue concerns notice of the proceedings, and (2) where the interests of justice would be served by judicial resolution of an issue arising from a change in the controlling law occurring after the agency action was taken. LHT's claim that the emergency rule is unconstitutional and unauthorized by the relevant statutes does not fall within either exception.

ed in the exhaustion of its administrative remedies.

The AOPA provides that "[j]udicial review is initiated by filing a petition for review in the appropriate court." Ind. Code § 4–21.5–5–2(a).

> Only a person who qualifies under:
>
> (1) section 3 of this chapter concerning standing;
>
> (2) section 4 of this chapter concerning exhaustion of administrative remedies;
>
> (3) *section 5 of this chapter concerning the time for filing a petition for review;*
>
> (4) section 13 of this chapter concerning the time for filing the agency record for review; and
>
> (5) any other statute that sets conditions for the availability of judicial review;
>
> is entitled to review of a final agency action.

Ind.Code § 4–21.5–5–2(b) (emphasis added). Thus, a timely petition for judicial review is only one of several requirements to obtain judicial review. Additionally, the person seeking judicial review must have exhausted all administrative remedies. *Id.;* Ind.Code § 4–21.5–5–4(a) ("A person may file a petition for judicial review under this chapter only after exhausting all administrative remedies available within the agency whose action is being challenged and within any other agency authorized to exercise administrative review."). Consequently, LHT's argument is misplaced.

LHT also argues that it exhausted its administrative remedies by discussing the constitutionality and validity of the Emergency Rule with the Commission's counsel

and because the Emergency Rule and transfer tax were "squarely before the board and a central part of the discussion at the Commission's August 21, 2007[ ] meeting." Appellant's Brief at 20.

We first note that LHT's contention that the Emergency Rule was unconstitutional or invalid or that the $9 million transfer fee was not authorized under the relevant statutes was not raised at the Commission's hearing or in any of the filings before the Commission. At the hearing, the discussion centered on a request to waive transfer rules with respect to LHT's contribution of 20% of its membership interests (or $9 million) to the Central Indiana Community Foundation. The discussion did not concern the legality or constitutionality of the transfer rules, and LHT did not question the Commission's ability to impose the $9 million transfer fee.[8]

▇▇ To the extent that LHT raised the constitutionality or legality of the Emergency Rule with the Commission's counsel, we conclude that these actions were not sufficient to exhaust LHT's administrative remedies. LHT claims to have discussed the constitutionality and legality of the Emergency Rule with the Commission's counsel in emails, a letter, and telephone conversations. The record contains no evidence regarding the telephone conversations, and the emails included in the record do not mention the legality or constitutionality of the Emergency Rule. LHT did send the Commission's counsel a letter and draft complaint regarding this issue. However, LHT did not raise the issue to the Commission and, just a few days after sending the letter at issue, LHT filed a document with the Commission proposing a $9 million transfer fee, a $10 million payment to the Central Indiana Community Foundation, and a $10 million invest-

---

8. LHT concedes in its reply brief that it "did not raise its challenges to the emergency rule at the formal hearing...." LHT's Reply Brief at 6.

ment in an Indiana business. On August 20, LHT filed another supplemental filing with the Commission. The filing included a request that the Commission "consider the benefit to the State of Indiana" of a $9 million transfer fee, a $9 million contribution to an affiliate of the Central Indiana Community Foundation, and a $10 million investment in an Indiana business. Appellant's Appendix at 309–310. At the August 21, 2007 hearing, LHT did not raise the constitutionality or legality of the Emergency Rule or transfer fee.

We conclude that the letter to the Commission's counsel did not exhaust LHT's administrative remedies. Rather, LHT easily could have brought the issue to the Commission's attention either in one of its filings or at the hearing, and LHT did not do so. Instead, LHT negotiated a settlement agreement and a transfer fee payment. Consequently, we conclude that LHT did not exhaust its administrative remedies.

**B.** *Was LHT Required to Exhaust its Administrative Remedies?*

**1.** *Futility.*

 Alternatively, LHT argues that its failure to exhaust its administrative remedies should be excused because exhausting the administrative remedies would have been futile. The exhaustion of administrative remedies may be excused if the exercise would be futile. *M–Plan*, 809 N.E.2d at 839. However, "the exhaustion requirement . . . should not be dispensed with lightly on grounds of 'futility.' " *Id.* "To prevail upon a claim of futility, 'one must show that the administrative agency was powerless to effect a remedy or that it would have been impossible or fruitless and of no value under the circumstances.' " *Celebration Fireworks*, 829 N.E.2d at 984 (quoting *M–Plan*, 809 N.E.2d at 840).

 LHT argues that presentation of the constitutionality and legality of the Emergency Rule to the Commission would have been futile because the Commission's counsel had informed LHT that the Commission had "declined to hear any challenge to the validity and constitutionality of its emergency rule and transfer tax." Appellant's Brief at 16. Again, there is no evidence in the record of the alleged discussion between the Commission's counsel and LHT's counsel. *See supra* note 4. We remind LHT that "[i]t is well settled that matters outside the record cannot be considered by this court on appeal." *Schaefer*, 804 N.E.2d at 187 n. 3. LHT has failed to demonstrate that presentation of the issue to the Commission was futile. *See, e.g., Celebration Fireworks*, 829 N.E.2d at 984 (rejecting the appellant's futility argument and noting that "the mere fact that an administrative agency might refuse to provide the relief requested does not amount to futility").

**2.** *Facially Invalid or Unconstitutional.*

 LHT also argues that it was not required to exhaust its administrative remedies because the Emergency Rule was facially invalid or unconstitutional. Under some circumstances, the Indiana Supreme Court has concluded that a litigant may bypass the exhaustion of administrative remedies where "a statute is void on its face," and "if an agency's action is challenged as being ultra vires and void." *Ind. Dep't of Envtl. Mgmt. v. Twin Eagle LLC*, 798 N.E.2d 839, 844 (Ind.2003). However, "[e]ven if the ground of the complaint is the unconstitutionality of the statute, which may be beyond the agency's power to resolve, exhaustion of administrative remedies may still be required because administrative action may resolve the case on other grounds without confronting broader legal issues." *Id.; see*

*also Celebration Fireworks,* 829 N.E.2d at 982.

Relying upon *Twin Eagle* and *Ind. State Bd. of Pub. Welfare v. Tioga Pines Living Ctr., Inc.,* 575 N.E.2d 303 (Ind.Ct.App. 1991), *reh'g denied, trans. denied,* LHT argues that, because it challenges the constitutionality and validity of the Emergency Rule, it was not required to raise the issue to the Commission. We find *Twin Eagle* and *Tioga Pines* distinguishable.

In *Twin Eagle,* a developer filed a declaratory judgment action seeking to prevent the Indiana Department of Environmental Management ("IDEM") from enforcing state environmental laws against its project. 798 N.E.2d at 842. IDEM responded by filing a motion to dismiss due to the developer's failure to exhaust administrative remedies, and both parties also filed motions for summary judgment. *Id.* The trial court granted the developer's motion for summary judgment, concluding that: "(1) Indiana state environmental laws gave IDEM no [National Pollutant Discharge Elimination System ("NPDES")] regulatory authority over private ponds or isolated wetlands that are not 'waters of the United States' and could not require an NPDES permit for activities affecting those waters; (2) whether or not IDEM could regulate some waters not subject to the CWA, Indiana statutes gave IDEM no jurisdiction over private ponds and isolated wetlands; (3) IDEM could not bring an enforcement action for the discharge of fill material into waters that are not waters of the United States; and (4) IDEM's interim regulatory process constitutes an invalid attempt at rulemaking without complying with required procedures." *Id.* at 843.

IDEM appealed to the Indiana Supreme Court pursuant to Ind. Appellate Rule 56(A) and argued that the trial court lacked subject matter jurisdiction due to the developer's failure to exhaust its administrative remedies. *Id.* The Court summarized the issues on appeal as:

(1) does IDEM have the authority to regulate "waters of the state" previously regulated by the Section 404 program; (2) if IDEM is so authorized, can it properly exercise that authority through the NPDES permitting process; (3) if IDEM does have the authority to prohibit a discharge without an NPDES permit as to some waters, does that authority extend to discharges into private ponds and isolated wetlands in general and these waters in particular.

*Id.* at 844. The Court concluded that "[a]ll of these issues are pure issues of law" and, thus, the developer was not required to exhaust its administrative remedies. *Id.* at 845. However, the Court noted that whether "the particular waters at issue" are subject to regulation was a "fact sensitive issue" that should be resolved through the administrative process. *Id.*

Similarly, in *Tioga Pines,* a class of nursing homes brought a declaratory judgment action against the Indiana State Board of Public Welfare arguing that the agency's implementation of a new "cap rate" on payments "was not duly adopted and promulgated by the State because the applicable statutory procedure for doing so had not been followed." 575 N.E.2d at 305. The trial court entered a preliminary injunction against the State, and the State filed an interlocutory appeal. *Id.* at 305–306.

On appeal, we addressed whether the nursing homes were required to exhaust their administrative remedies prior to bringing the declaratory judgment action. *Id.* at 307. We noted:

The gravamen of the nursing homes' complaint below is that the regulations attempting to change the method by

which the cap rates are determined are void. They were not adopted according to the requirements of state statute prescribing the method by which departmental regulations may be amended in this state, the nursing homes claim. We see no fundamental difference between such a lawsuit and one challenging the validity of a statute itself.

*Id.* We concluded that a challenge to the validity of departmental regulations under the circumstances presented in the case was not prohibited by the Declaratory Judgments Act. *Id.*

Here, as in *Tioga Pines,* LHT challenges the validity of the Commission's Emergency Rule. However, unlike both *Tioga Pines* and *Twin Eagle,* LHT did not file a declaratory judgment action challenging the regulation; rather, LHT brought a petition for judicial review of the Commission's order allowing it to transfer ownership of its shares of Indiana Downs.

 More importantly, we note that LHT filed its petition with the Commission and negotiated an agreement that allowed for a quick resolution of the petition, which LHT and Indiana Downs wanted so that Indiana Downs could meet the November 2007 slot machine licensing fee requirements. LHT did not raise the constitutionality of the Emergency Rule before the Commission and accepted the benefits of its agreement and the Commission's order allowing the transfer of ownership of its shares in Indiana Downs. The benefits of such negotiation with an agency were observed by the Indiana Supreme Court in *M–Plan,* 809 N.E.2d at 839, where the Court noted: "As a practical matter, requiring resort first to the Board and then to the Commissioner may avoid, by negotiation, issues raised by a complex formula that necessarily works from time to time to the advantage or disadvantage of individual members." We conclude that this is

a case where "[e]ven if the ground of the complaint is the unconstitutionality of the statute, which may be beyond the agency's power to resolve, exhaustion of administrative remedies may still be required because administrative action may resolve the case on other grounds without confronting broader legal issues." *Twin Eagle,* 798 N.E.2d at 844; *see also Celebration Fireworks,* 829 N.E.2d at 982. The settlement allowed the parties to resolve the petition without confronting the broader legal issues. Having accepted the benefits of the arrangement, LHT cannot now argue that the Emergency Rule is invalid and unconstitutional and that it is entitled to a refund of the $9 million transfer fee.

 Because LHT's arguments regarding the validity of the Emergency Rule are mainly issues of law, we might have reached a different result if LHT had simply filed a declaratory judgment action rather than pursuing the settlement with the Commission. *See, e.g., Ind. Dep't of Envtl. Mgmt. v. Chem. Waste Mgmt. of Ind.,* 604 N.E.2d 1199, 1203 (Ind.Ct.App. 1992) (allowing declaratory judgment action, which contested IDEM's policy of applying a statute retroactively to pending applications, where the issue was purely legal rather than factual), *trans. denied.* However, having pursued the settlement with the Commission and having failed to present its arguments regarding the validity of the Emergency Rule, LHT failed to exhaust its administrative remedies.

In summary, we conclude that LHT did not argue to the Commission that the Emergency Rule was invalid and unconstitutional. LHT's failure to raise the issue with the Commission is not excused by futility or by its challenge to the constitutionality of the rule. Because LHT failed to exhaust its administrative remedies, the trial court did not have subject matter jurisdiction and properly granted the Com-

mission's motion to dismiss. *See, e.g., Turner v. City of Evansville,* 740 N.E.2d 860, 862 (Ind.2001) (holding that a police officer's challenges to the past and present Chiefs' right to office, the ordinance establishing the Merit Commission, and an agreement between the City and the Fraternal Order of Police could be challenged "before the body and subsequently raised in court through the process of judicial review" and that the officer had failed to exhaust his administrative remedies). Given our resolution of this issue, we express no opinion on LHT's argument that the Emergency Rule is facially invalid and unconstitutional.[9]

For the foregoing reasons, we affirm the trial court's grant of the motion to dismiss.

Affirmed.

BAKER, C.J. and MATHIAS, J., concur.

---

**9.** Although LHT asks that we determine that the trial court erred by granting the motion to dismiss, LHT also asks that we decide *on the merits* that the Commission's Emergency Rule, 71 Ind. Admin. Code § 11–1–13(d), is facially invalid and unconstitutional. Additionally, the Commission asks that, if we determine the trial court erred by granting the motion to dismiss based upon failure to exhaust administrative remedies, that we affirm the dismissal under Ind. Trial Rule 12(B)(6) due to the parties' settlement agreement. Indiana Downs filed an appellee's brief arguing that, in the event that we determine the trial court erred by dismissing LHT's petition for judicial review, "the only appropriate remedy would be to remand this matter to the trial court for further adjudication on the merits." Appellee's Brief of Indiana Downs at 3. Indiana Downs pointed out that it may have counterclaims against LHT that would require consideration by the trial court. We note that, even if we had reversed the trial court's dismissal for lack of subject matter jurisdiction, significant issues would remain regarding the settlement agreement. Those issues were not fully briefed by the parties and would require consideration by the trial court. Thus, even if we had determined that the trial court erred by granting the motion to dismiss, the appropriate remedy would be to remand to the trial court for consideration of LHT's petition on the merits.