## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 24 2020, 10:17 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Darren Bedwell
Marion County Public Defender
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

George P. Sherman
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

John C. Jones,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

March 24, 2020

Court of Appeals Case No.
19A-CR-2161

Appeal from the Marion Superior Court

The Honorable Clayton A. Graham, Judge

Trial Court Cause No.
49G07-1810-CM-34883

**Crone, Judge.**

## Case Summary

John C. Jones appeals his conviction for class A misdemeanor possession of marijuana. He contends that the State presented insufficient evidence to support his conviction and that the trial court committed fundamental error in instructing the jury. Finding sufficient evidence, and concluding that Jones has not met his burden to demonstrate fundamental error, we affirm.

## Facts and Procedural History

On October 10, 2018, Indianapolis Metropolitan Police Department Detective Sergeant Steven Spears was working undercover conducting surveillance for a drug investigation. Detective Spears was parked in an unmarked vehicle on East LeGrande Avenue when Jones, who was not a target of the investigation, exited his nearby residence and approached the vehicle. Jones asked Detective Spears why he was parked in front of his residence. Detective Spears told Jones that he was waiting for a realtor and that he would be leaving soon. Jones told Detective Spears that he needed to move. Detective Spears explained to Jones that he was not doing anything wrong and that he was parked legally on the side of the road. Jones became "very upset" and told Detective Spears "to get out of his f**king [parking] spot." Tr. Vol. 2 at 86. Detective Spears refused, and Jones went back inside his residence. Detective Spears radioed his team so that they would be ready to assist in the event that Jones failed to "calm[] down." *Id.* at 88. Jones stayed inside for a short period but then exited and got into his own vehicle. Jones pulled his vehicle right up to Detective Spears's

vehicle and "glared" at Detective Spears. *Id.* Jones then returned inside his residence.

[3] A few minutes later, Jones exited his residence and approached Detective Spears. Detective Spears rolled his window down a couple inches, and Jones told him, "I'm giving you one last f**king chance … you better move or you're going to get hurt." *Id.* at 89. After Detective Spears rolled his window back up, Jones "aggressive[ly]" grabbed at the detective's car "door handle and started yanking on it." *Id.* Detective Spears exited his vehicle and verbally identified himself as a police officer.

[4] Jones retreated inside his residence for a moment and then came back out and got in his own vehicle and drove away. Detective Spears followed him, and uniformed officers subsequently performed a traffic stop of Jones's vehicle. During the stop, Officer Christopher Maher "smelled a strong odor of marijuana coming from [Jones's] vehicle." *Id.* at 50-51. He immediately recognized the smell based upon his training and experience, which included "hundreds of arrests involving marijuana." *Id.* at 51. Consequently, Officer Maher searched the vehicle and found a "marijuana blunt cigarette" and a digital scale in the center console. *Id.*

[5] The State charged Jones with class A misdemeanor intimidation and class B misdemeanor possession of marijuana. The possession charge was subsequently enhanced to a class A misdemeanor based upon Jones's prior conviction for a drug offense. A jury trial was held on August 15, 2019.

During trial, Jones stipulated to the admission of a lab report containing the forensic analysis of the blunt found in his vehicle. The lab report stated that "the vegetation" in the "broken hand rolled cigarette" was tested and "was found to contain Marijuana with Tetrahydrocannabinol (THC) – percent not determined." State's Ex. 1.

[6] The jury found Jones guilty of class A misdemeanor possession of marijuana but not guilty of class A misdemeanor intimidation. Following a hearing, the trial court sentenced Jones to 365 days, with 351 days suspended and 180 days of non-reporting probation. This appeal ensued.

## Discussion and Decision

## Section 1 – The State presented sufficient evidence to support Jones's conviction.

[7] Jones first asserts that the State presented insufficient evidence to support his conviction for class A misdemeanor possession of marijuana. When reviewing a claim of insufficient evidence, we neither reweigh the evidence nor assess witness credibility. *Bell v. State*, 31 N.E.3d 495, 499 (Ind. 2015). We look to the evidence and reasonable inferences drawn therefrom that support the conviction, and will affirm if there is probative evidence from which a reasonable factfinder could have found the defendant guilty beyond a reasonable doubt. *Id.* In short, if the testimony believed by the trier of fact is enough to support the conviction, then the reviewing court will not disturb it. *Id.* at 500.

[8] To prove that Jones committed class A misdemeanor possession of marijuana, the State was required to prove that he knowingly or intentionally possessed marijuana. Ind Code § 35-48-4-11. Jones argues that the State failed to prove that the substance he possessed (the vegetation in the blunt) was actually marijuana. We disagree.

[9] At the time of Jones's possession of the blunt, October 2018, Indiana Code Section 35-48-1-19 provided:

> (a) "Marijuana" means any part of the plant genus Cannabis whether growing or not; the seeds thereof; the resin extracted from any part of the plant, including hashish and hash oil; any compound, manufacture, salt, derivative, mixture, or preparation of the plant, its seeds or resin.
>
> (b) The term does not include:
>
> (1) the mature stalks of the plant;
> (2) fiber produced from the stalks;
> (3) oil or cake made from seeds of the plant;
> (4) any other compound, manufacture, salt, derivative, mixture, or preparation of the mature stalks (except the resin extracted therefrom);
> (5) the sterilized seed of the plant which is incapable of germination;
> (6) industrial hemp (as defined by IC 15-15-13-6);[1] or
> (7) low THC hemp extract.

---

[1] At the time of Jones's possession, Indiana Code Section 15-15-13-6 defined "industrial hemp" as:

[10] Here, in addition to Officer Maher's testimony that he smelled what he recognized, based upon his training and experience, to be the strong odor of marijuana emanating from Jones's vehicle, the trial court admitted into evidence, by stipulation of the parties, a lab report that provided forensic analysis for the "broken hand rolled cigarette containing/spilling vegetation" found in the vehicle. State's Ex. 1. The report stated that "[t]he vegetation, with a net weight of 1.83 grams, was tested and was found to contain Marijuana with Tetrahydrocannabinol (THC) – percent not determined." *Id.*

[11] Jones speculates that the vegetation in the blunt could have been "industrial hemp" rather than marijuana because the lab report indicated that the percentage of THC present in the substance was "not determined." *Id.* First, we note that the statutory definition of marijuana adopted by our legislature does not include a specific reference to THC content. Accordingly, the State was not required to present evidence of the exact percentage of THC content in the substance. Moreover, we agree with the State that there is no reason to

---

(1) all nonseed parts and varieties of the Cannabis sativa plant, whether growing or not, that contain a crop wide average tetrahydrocannabinol (THC) concentration that does not exceed the lesser of:

    (A) three-tenths of one percent (0.3%) on a dry weight basis; or

    (B) the percent based on a dry weight basis determined by the federal Controlled Substances Act (21 U.S.C. 801 et seq.); or

(2) any Cannabis sativa seed that is:

    (A) part of a growing crop;

    (B) retained by a grower for future planting; or

    (C) for processing into, or use as, agricultural hemp seed.

The term does not include industrial hemp commodities or products.

believe that the forensic lab report identifying the substance specifically as "Marijuana" would have identified the substance as such if it were not. Significantly, Jones did not object to the validity of the forensic lab's testing procedures or methodologies underlying its conclusion that the substance was marijuana as defined by applicable statute, and he never once suggested during trial that the substance found in his possession might have been industrial hemp rather than marijuana. To the extent that Jones implies that the State was required to present a lab report that contained a finding that the substance *was not* industrial hemp, that is simply not the case. [2]

[12] Contrary to Jones's suggestion, it was not the State's burden to prove what the substance *was not*; meaning, the State was not required to establish that the substance in the blunt *was not* industrial hemp. Rather, it was the State's burden to prove that the substance in the blunt *was* marijuana. The police officer's testimony, coupled with the stipulated-to forensic lab report concluding that the

---

[2] Jones argues that the State was required to prove that the substance was not industrial hemp by proving that "the crop wide average" THC concentration for the substance tested exceeded "three-tenths of one percent (0.3%) on a dry weight basis." *See* Ind. Code § 15-15-13-6. How exactly the State could have acquired and presented evidence regarding "the crop wide average" THC concentration for the vegetation in the blunt is unknown to us. The language of the industrial hemp statute was clearly intended to legalize and regulate hemp farming rather than provide an additional evidentiary hurdle for the State in prosecutions for marijuana possession.

vegetation in the blunt was, in fact, marijuana, was sufficient to do so.[3] The State presented sufficient evidence to support Jones's conviction.

## Section 2 – The trial court did not commit fundamental error in instructing the jury.

Jones next argues that the trial court committed fundamental error in failing to instruct the jury regarding the definition of industrial hemp. Jones concedes that he did not tender the instruction that he now asserts should have been given, and that such failure has resulted in waiver of the issue. *See Ortiz v. State*, 766 N.E.2d 370, 375 (Ind. 2002) ("failure to tender an instruction results in waiver of the issue for review"). Thus, he asserts that fundamental error occurred when the trial court failed to sua sponte instruct the jury on the definition of industrial hemp. An error is fundamental if it clearly and blatantly violated basic principles of due process resulting in "undeniable and substantial potential for harm." *Batchelor v. State*, 119 N.E.3d 550, 559 (Ind. 2019) (citation omitted). Fundamental error is an "extremely narrow exception to the waiver rule," and a defendant "bears the heavy burden of showing that a fair trial was impossible." *Harris v. State*, 76 N.E.3d 137, 139 (Ind. 2017).

---

[3] Jones's brief includes numerous citations to material outside the record. We remind Jones that "[i]t is well settled that matters outside the record cannot be considered by this [C]ourt on appeal." *LHT Capital, LLC v. Ind. Horse Racing Com'n*, 891 N.E.2d 646, 654 (Ind. Ct. App. 2008) (citation omitted). Indeed, "[a] judge must not independently investigate facts in a case and must consider only the evidence presented." *See A.B. v. State*, 885 N.E.2d 1223, 1224 (Ind. 2008) (citing Ind. Code of Judicial Conduct, Commentary to Canon 3B).

Jones has not met that heavy burden. Jones is claiming that, in addition to giving the statutory definition of marijuana, which includes the substances that are excluded from the definition, the trial court was required to sua sponte also give an instruction specifically defining one of the substances, industrial hemp, that is *not* marijuana. He makes this assertion despite the fact that he presented no evidence or argument during trial that the substance found in his vehicle was industrial hemp. To say that such an instruction, when given completely out of context as Jones suggests, would have served to confuse the jury would be an understatement. Jones is essentially arguing that he was deprived of a fair trial because the trial court failed to act as his advocate and advance a novel theory that was never raised and that was unsupported by the evidence. His argument in unavailing. *See Santiago v. State*, 985 N.E.2d 760, 761 (Ind. Ct. App. 2013) (jury instruction must be supported by evidence and should not serve to mislead jury as to law in case). Jones has not met his burden to establish that the trial court's instruction of the jury resulted in undeniable and substantial potential for harm. We affirm his conviction.

Affirmed.

May, J., and Pyle, J., concur.